

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
03/20/2019

| | | |
|---|---|---|
| **IN RE:** | § | |
| **GAIL THOMAS WHITCOMB** | § | **CASE NO: 17-31692** |
| **Debtor** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **GAIL THOMAS WHITCOMB,** *et al* | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-3199** |
| | § | |
| **Paull & Partners-Locke Lane,** *et al* | § | |
| **Defendants** | § | |

## <u>MEMORANDUM OPINION</u>

Gail Thomas Whitcomb filed a lawsuit in state court against Paull & Partners-Locke Lane to (i) enjoin the defendants from foreclosing on his alleged homestead based upon an unpaid loan balance owed to Paull & Partners by Whitcomb, (ii) declare Paull & Partners' lien on the property void, and (iii) assert other related causes of action. Whitcomb removed the state court lawsuit to this Court after he filed bankruptcy.

Paull & Partners moved for summary judgment on Whitcomb's claims, arguing that:

(i)  Whitcomb's Property lost its protection as his homestead under Texas law after Whitcomb conveyed the property to Waterdog 77019, LLC;

(ii)  if the property did not lose its homestead protection, Paull & Partners interest in the Property would be subrogated to any liens securing any valid loans on the homestead paid with the proceeds of its loan; and

(iii)  if any of its liens were unenforceable, any principal and interest owed to Paull & Partners under the loan may not be forfeited.

Having resolved certain contested issues of fact as outlined below, the Court now grants Paul & Partners' motion for summary judgment in part and denies it in part.

**Background**

Gail and Patricia Whitcomb purchased a home at 3011 Locke Lane (the "Property") in 2003.  (ECF No. 20 at 4).  The Whitcombs financed the purchased of the Property with two loans: one from Cadence Bank, N.A. secured by a deed of trust, and a second from Gail Whitcomb's Grandmother, Geraldine Whitcomb, who was listed as a co-owner of the Property.  (ECF No. 20 at 5).  Eventually, Mr. Whitcomb's Grandmother released her deed of trust and transferred her interest in the Property to the Whitcombs.  (ECF No. 20 at 5).

The Whitcombs experienced financial difficulties in 2014 and modified their loan with Cadence Bank.  (ECF No. 20-5).  The relief from the loan modification was short lived, and the Whitcombs struggled to pay property taxes on their home.  (ECF No. 20 at 5).  The Whitcombs turned to a tax lien lender, which loaned the Whitcombs the money to pay off the tax liens against the Property.  (ECF No. 20 at 5).  The terms of the tax loan subrogated the taxing authority's interest in the Property to the tax lien lender.  (ECF No. 20 at 5).  Despite their attempts to obtain financial relief, the Whitcombs were left with the same financial issues they began with.  (ECF No. 20 at 5).

Much of the Whitcombs financial difficulties can be traced to a family dispute that arose when Mr. Whitcomb's Grandmother passed away.  (*See* Case No. 17-03029; ECF No. 9 at 2). After Geraldine Whitcomb's death, Mr. Whitcomb and his aunt, Jeriann Kolber, clashed over control of the estate's significant assets.  (*See* Case No. 17-03029; ECF No. 9 at 2).  After engaging in significant litigation, the parties entered into a global settlement agreement which required binding arbitration to resolve any future disputes.  (Case No. 17-03029; ECF No. 9 at 2).  One such dispute arose between the Whitcombs and Kolber in 2013 and the arbiter awarded Kolber a significant victory.  (Case No. 17-03029; ECF No. 9 at 3).  Beginning in 2015, Mr.

Whitcomb believed he could vindicate his rights and claim to his mother's estate by attempting to overturn the arbitration award through additional litigation. (*See* Case No. 17-03029; ECF No. 9 at 3). Mr. Whitcomb's efforts proved both costly and unsuccessful.

In 2015, the Whitcombs contacted Paull & Partners, LLC to obtain a loan based on the Property's equity. (ECF No. 22 at 2). Paull & Partners' business is based on providing loans to "house flippers" to facilitate the renovation and resale of residential homes and properties. (August 30, 2018 Hearing at 9:49 a.m.). Paull & Partners alleges that it only provides loans to companies and does not provide home equity loans to individuals. (August 30, 2018 Hearing at 9:49 a.m.).

Whitcomb formed a Texas limited liability corporation named Waterdog 77019 on August 30, 2015. Waterdog's certificate of formation and company agreements named Mr. Whitcomb the sole member. On September 1, 2015, the Whitcombs transferred their interest in the Property to Waterdog through a special warranty deed. (ECF No. 22 at 2).

The parties dispute the reason for Waterdog's formation. The Whitcombs claim that Waterdog was formed at the insistence of Paull & Partners or its agents as a prerequisite for funding the home equity loan. (ECF No. 22 at 2). Paull & Partners concedes to knowing that Waterdog was a recently formed LLC, but portrays the formation of an LLC for the purpose of home acquisition as a commonly accepted practice in the house flipping industry. (August 30, 2018 Hearing at 9:58 a.m.).

Shortly after Waterdog's formation, the loan closed on September 4, 2015. Pursuant to the terms of the loan, Paull & Partners provided $800,000.00 to Waterdog. (ECF No. 20 at 6). In exchange, Mr. Whitcomb signed a promissory note and deed of trust, in his capacity as Waterdog's managing member. (ECF No. 20 at 6). Mr. Whitcomb also signed a personal

guaranty as a requisite for funding the loan.  (ECF No. 20 at 6).  The funds of the loan paid Cadence $443,729.45 to release its purchase money mortgage on the Property and $45,406.54 to release the tax relief agency's interest in the Property.  (ECF No. 20 at 6).  The remaining $310,864.01 of loan proceeds remained with Waterdog.

After the initial loan from Paull & Partners, the Property incurred $5,947.54 in homeowner's association assessments.  (ECF No. 20 at 6).  Waterdog contacted Paull & Partners in December 2015 to obtain a loan modification and extension.  (ECF No. 20 at 6).  The parties agreed to increase the outstanding principal of the loan by $75,000.00.  (ECF No. 20 at 6).  As part of the extension, Mr. Whitcomb signed a non-homestead affidavit, which stated that Waterdog was the sole owner of the home and would not claim a homestead exemption over the Property.  (ECF No. 20 at 6).  The $75,000.00 was used to pay off the homeowner's association assessment, but Paull & Partners retained the remainder to pay off pending interest payments due under the loan.  (ECF No. 20 at 6).

Without Paull & Partners' knowledge, Waterdog deeded the property back to the Whitcombs on July 26, 2016.  (ECF No. 20 at 7).  The Whitcombs claim to have executed this transfer to claim a homestead exemption on the Property and reduce their property tax assessments.  (ECF No. 22 at 4).

The Waterdog loan went into default after the Whitcombs failed to make required payments.  In December 2016, Paull & Partners gave notice of their intent to foreclose on the property.  (ECF No. 20 at 7).  The Whitcombs filed suit in state court and obtained a temporary injunction on February 2, 2017, which prevented Paull & Partners from foreclosing on the Property under the Waterdog Deed of Trust.  (ECF No. 20 at 7).  Mr. Whitcomb filed for

bankruptcy and this suit was removed to this Court on March 31, 2017 as part of Mr. Whitcomb's personal bankruptcy proceeding.  (ECF No. 22 at 4).

The Whitcombs allege that they have continuously occupied the Property since 2003 and maintained the Property as their homestead throughout that time.  (ECF No. 22 at1).  The Whitcomb's suit against Paull & Partners alleges that the transfer of the Property from the Whitcombs to Waterdog was a pretended sale with a condition of defeasance that is void under the Texas Constitution.  (ECF No. 22 at 5).  Without a valid sale to Waterdog, the Whitcombs argue that Paull & Partners has no lien or interest in the Property.  (ECF No. 22 at 5).

Paull & Partners filed a motion for summary judgment, arguing that the Property lost its homestead character upon transfer to Waterdog and that the transfer is not a pretended sale under Texas law, based on the Whitcombs' intent to convey title.  (ECF No. 20 at 8–12).  Alternatively, Paull & Partners claims that if the transaction is a pretended sale, they are subrogated to the rights of the creditors whose liens were extinguished using the loan proceeds of its loan to Waterdog.  (ECF No. 20 at 13–14).

Concurrent with the motions for summary judgment, the Trustee filed an objection to Mr. Whitcomb's claimed homestead exemption to the Property.  (Case No. 17-31692; ECF No. 156). The Trustee seeks to limit Mr. Whitcomb's homestead exemption to $160,375.00 under 11 U.S.C. § 522(p)(1)(A) because he acquired the Property from Waterdog within 1215 days before filing his bankruptcy petition.

On August 30, 2018, the Court held an evidentiary hearing and oral arguments to determine the following disputed issues of fact:

- Whether the conveyance of the property from Whitcomb to Waterdog was void as a pretended sale under Article XVI, § 50(c) of the Texas Constitution.

- If the conveyance of the property was void as a pretended sale:

    o   What are Paull & Partners' rights against Whitcomb and the Estate; and

    o   What liens, if any, Paull & Partners holds against the property.

(ECF No. 24 at 2).  At the conclusion of testimony, the Court issued a preliminary ruling.  The Court held the transaction did not fit within the traditional pretended sale paradigm because it was not done at Paull & Partners' insistence.  (August 30, 2018 Hearing at 11:30 a.m.). However, the evidence also demonstrated that the Whitcombs intended to reclaim the Property in their own names.  (August 30, 2018 Hearing at 11:30 a.m.).  Having resolved the contested issues of fact, Paull & Partners' motion is ripe for judgment.  The Court requested additional briefing regarding whether a pretended sale may exist without a duty of inquiry from the lender and whether a lender had a duty of inquiry regarding the homestead use of property prior to providing a loan.  (August 30, 2018 Hearing at 11:25 a.m.).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

### Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element

of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012).  "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact.  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016).  A credibility determination may not be part of the

summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

### Pretended Sale

The Texas Constitution provides homeowners with robust protection against forced sales and liens through homestead exemptions. Tex. Const. art. XVI, § 50(a). Liens encumbering

homestead property that fail to comply with the Texas Constitution are null and void. *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016). Parties may not contract around the homestead protections provided under the Texas Constitution. *Id.* Once a property is characterized as a homestead, its homestead character is lost only after death, abandonment, or alienation. *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003). One transaction which the Texas Constitution renders void is a pretended sale with a condition of defeasance. Tex. Const. art. XVI, § 50(c); *Perry*, 345 F.3d at 310. Parties to a pretended sale do not intend for title to vest in the purchaser. *John T. Hardie & Co. v. Campbell*, 63 Tex. 292, 295 (Tex. 1885). A pretended sale must also contain a condition of defeasance which allows "the seller to reclaim title to the property conveyed after the loan is repaid." *Perry*, 345 F.3d at 313.

Paull & Partners claims that the Whitcombs lost their homestead rights to the Property through alienation once they transferred title to Waterdog. (ECF No. 20 at 8–9). Whitcomb argues that this transfer of title was a pretended sale with a condition of defeasance, which is void under the Texas Constitution. (ECF No. 22 at 6–13). Paull & Partners disputes categorizing the transfer of title to Waterdog as a pretended sale, based on the Whitcombs' intent to transfer their interest in the Property to Waterdog and because the instruments which conveyed title did not allow the Whitcombs to reacquire title to the Property prior to repayment of the loan. (ECF No. 20 at 12).

*Intent to Transfer Title*

The Whitcombs argue that they never intended to transfer title to Waterdog, and that the transfer was done at Paull & Partners's direction as a prerequisite for funding the loan. (ECF No. 22 at 8–9). Paull & Partners responds that the deed transferring title of the Property to Waterdog reflects the Whitcombs' intent to convey title to the property. (ECF No. 20 at 11).

Texas courts have held that a presumption of intent to transfer title arises when a valid deed is signed, delivered, and recorded. *Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 811 (Tex. App.—Houston [14th Dist] 2018). This presumption may be overcome if the grantor demonstrates that she lacked intent to divest herself of the title. *Id.* The grantor's intent is a question of fact to be determined by examining the "facts and circumstances preceding, attending, and following execution of the deed." *Id.* (citing *Johnson v. Cherry*, 726 S.W.2d 4, 6 (Tex. 1987)).

The Whitcombs do not dispute that Waterdog was created for the purposes of obtaining the Paull & Partners loan. They also do not dispute that a valid deed to Waterdog was signed, delivered, and recorded. This establishes the presumption that the Whitcombs had the requisite intent to transfer title to the Property.

Much of Whitcombs' argument is devoted to Waterdog's role in the transaction, specifically—Waterdog's failure to transact business, observe corporate formalities, and its creation at Paull's insistence. (ECF No. 22 at 7). However, *Waterdog's* failures do not conclusively establish the *Whitcombs'* intent. Additionally, transfers of title to a corporation in order to obtain a loan are not categorically voidable under the Texas Constitution. *Berry*, 558 S.W.3d at 813.

Yet, a significant portion of the testimony also cuts against the Whitcombs' intent to convey the property to Waterdog. The Whitcombs testified that they continuously occupied the Property even after deeding the title to Waterdog without paying rent or compensating the corporation. (August 30, 2018 Hearing at 10:31 a.m). Nor did Waterdog compensate the Whitcombs for the Property at the time of the transfer. (August 30, 2018 Hearing at 10:31 a.m.). Mr. Whitcomb testified that he only intended for Waterdog to retain the property "just as long as

we could facilitate the transaction." (August 30, 218 Hearing at 10:32 a.m.). Perhaps most importantly, the Whitcombs demonstrated their lack of intent by undoing the transaction—unilaterally re-conveying the Property from Waterdog—to reclaim a homestead exemption and reduce their property tax liability. (August 30, 2018 Hearing at 9:17 a.m) The totality of this evidence may establish the absence of intent to convey the property to Waterdog sufficient to preserve the matter for a trial rather than a summary disposition.

### Condition of Defeasance

The second requirement for a pretended sale is that it contains a condition of defeasance. Tex. Const. art. XVI, § 50(c); *Perry*, 345 F.3d at 313. In Paull & Partners's view, the transaction to Waterdog cannot be a pretended sale because it lacks such a condition of defeasance, entitling it to summary judgment. (ECF No. 20 at 12). Whitcomb argues that an explicit written or oral agreement is not required to establish the presence of a condition of defeasance. (ECF No. 22 at 11). Whitcomb further suggests that the existence of a condition of defeasance in this dispute is a genuine issue of material fact as demonstrated through the parties' intent and actions. (ECF No. 22 at 11).

A condition of defeasance allows a seller to reclaim title the property after a loan is repaid. *Id.* A typical condition of defeasance involves "an understanding. . . between the grantors and grantee that when the purported notes and deeds had served their purpose, the homestead should be reconveyed to the grantors." *Anglin v. Cisco Mortg. Loan Co.*, 141 S.W.2d 935, 938 (Tex. 1940). Conditions of defeasance may be express, implied, or stated in other separately executed contemporaneous documents such as an option to repurchase. *Tittle v. Vanleer*, 34 S.W. 715, 722 (1896).

The special warranty deed that conveyed the Property from the Whitcombs to Waterdog contained no condition of defeasance. (*See* ECF No. 20-11). The deed transferred the Whitcomb's "right, title, and interest" in the property and made no reservations or express statements regarding a possibility of reconveyance upon repayment. (ECF No. 20-11 at 1). Similarly, Whitcomb does not point to any express writings which evince a condition of defeasance regarding the transfer of the Property. (*See* ECF No. 22 at 9–13).

On the contrary, the Whitcombs argue that the intent and actions of the parties may establish a condition of defeasance. (ECF No. 22 at 11). The Whitcombs cite Mr. Whitcomb's deposition testimony that "Waterdog was not really a company" as evidence for intent to reclaim the Property. (ECF No. 22 at 12). However, a condition of defeasance must predate or be contemporaneous with the transaction. *Berry*, 558 S.W.3d at 814. When the transfer of the Property took place, Waterdog was a valid limited liability company, recognized by the State of Texas. (*See* ECF Nos. 20-9, 20-10). In fact, Mr. Whitcomb's own testimony and pleadings purport that a valid limited liability company was a prerequisite to obtaining the Paull & Partners loan. (ECF No. 22 at 3). As a result, even if Waterdog was formed as a sham company when the loan was executed, Waterdog's formation reflects the Whitcombs' intent to obtain the loan proceeds rather than reclaim the Property.

Of course, Mr. Whitcomb owned 100% of Waterdog. It is clear that mere ownership alone is insufficient to establish a condition of defeasance. *Berry*, 558 S.W.3d at 810–11. However, in this case, Mr. Whitcomb's ownership allowed a defeasance to occur without a writing between Whitcomb and Waterdog. In light of other evidence described below, which supports a condition of defeasance, Mr. Whitcomb's 100% ownership of Waterdog is relevant.

The Whitcombs also suggests that the reconveyance of the Property from Waterdog to themselves is indicative of a condition of defeasance.  (ECF No. 22 at 12).  However, a condition of defeasance involves the return of property after a certain condition occurs, such as repayment of a debt.  *Berry*, 558 S.W.3d at 814; *Perry*, 345 F.3d at 313.   In this case, Mr. Whitcomb testified that he re-conveyed the Property from Waterdog for the purpose of reducing his property tax liability.  (ECF No. 22 at 4; August 30, 2018 Hearing at 9:17 a.m.).   No such condition triggered the return of the Property from Waterdog to the Whitcombs.

Yet, the Whitcombs presented testimony at the August 30, 2018 hearing demonstrating their intent to reacquire the Property.   Mr. Whitcomb stated that when he entered into the transaction he intended to "have his issues with the estate resolved, have access to the Property, pay off the loan, and take back ownership of [the Property]."  (August 30, 2018 Hearing at 10:27 a.m.).   Mrs. Whitcomb similarly testified that the Paull & Partners loan would be repaid after overturning the arbitration award in the dispute over Geraldine Whitcomb's estate.  (August 30, 2018 Hearing at 11:18 a.m.).   Both Mr. and Mrs. Whitcomb stated that it was their belief that after Paull & Partners was repaid, Waterdog would then transfer the Property back to their names.  (ECF Nos. 22-1 at 2; 22-2 at 2).  The Whitcombs' testimony sufficiently demonstrates that when the loan was funded, they planned to use the proceeds of their pending litigation to repay the loan and reclaim the property.  This fits squarely within the definition of a condition of defeasance.  Perry, 345 F.3d at 313.  Accordingly, a condition of defeasance may exist in this transaction, satisfying the requirements of a pretended sale under Texas law, and sufficient to overcome a summary disposition.

*Paull & Partners v. Berry*

The Texas Court of Appeals confronted a similar dispute between Paull & Partners and a homeowner. *See Paull & Partners Investments, LLC v. Berry*, 558 S.W.3d 802, 810–11 (Tex. App.—Houston [14th Dist.] 2018). The Berrys experienced financial distress and sought a loan for additional financing. *Id.* at 806. The Berrys contacted business associates of Paull & Partners and advised them about their financial assets, including their home. *Id.* The Berrys alleged that they were instructed to transfer their home to a corporation in order to obtain a loan of $275,000.00 in the corporation's name and that their home would secure repayment. *Id.* at 806–07. The Berrys advised Paull & Partners' representatives that they intended to continue living in the home after obtaining the loan and were informed that this was acceptable. *Id.* at 806. After the loan was funded, the Berrys defaulted and Paull & Partners moved to foreclose. *Id.* at 807.

Like the Whitcombs, the Berrys argued that the conveyance of the property to the newly formed corporation was a pretended sale and were awarded summary judgment by the state trial court. *Id.* at 808. However, the Texas Court of Appeals reversed the trial court, holding that the Berrys failed to establish both intent to transfer title and a condition of defeasance required for a pretended sale. *Id.* at 809–14.

A fact issue existed regarding intent to transfer title. *Id.* at 811. The State Court of Appeals cited the presumption that arises after a deed is executed and delivered, which the Berrys failed to overcome. *Id.* In the Berrys' case, material questions of fact existed regarding the Berrys' intent to divest themselves of title based on whether the Berrys or the LLC made payments to the loan. *Id.* Also, while the Berrys continuously occupied and paid insurance on

the home, they also failed to pay property taxes. *Id.* These issues were sufficient to raise a question of fact regarding the Berrys' intent to transfer title.

The Texas Court of Appeals also held that the Berrys failed to prove a condition of defeasance. *Id.* at 813. The Berrys argued that a condition of defeasance existed based on equitable title. *Id.* Since the LLC holding title to their home was under their sole control and could be dissolved at any time at their discretion, the Berrys argued that a condition of defeasance was necessarily implied. *Id.* The Texas Court of Appeals rejected this argument, holding that equitable title alone fails to satisfy a condition of defeasance which would require a pre-existing understanding that the company would dissolve upon a triggering event. *Id.* at 814.

Although the factual basis for the dispute between the Berrys and Paull & Partners appears to parallel the Whitcombs', the two are distinguishable. In *Berry*, issues of fact existed regarding intent for title to vest in the corporation. *Id.* at 811. Specifically, the fact that a payment under the loan may have come from the corporation raised an issue of fact regarding intent. In the Whitcombs' dispute, while a presumption was raised regarding transfer of the Property, all payments to Paull & Partners were sent by the Whitcombs rather than Waterdog. (August 30, 2018 Hearing at 10:37 a.m.). Both Mr. and Mrs. Whitcomb testified that the transfer of the property was done solely for the purpose of obtaining the loan. (August 30, 218 Hearing at 10:32 a.m.). The Whitcombs further demonstrated a lack of intent by re-conveying the Property to themselves from Waterdog in order to claim a homestead exemption and reduce their property tax liability. (August 30, 218 Hearing at 9:17 a.m.).

The alleged condition of defeasance in *Berry* was premised on the argument that the corporation was under the Berrys' sole control, which failed to establish the existence of a condition allowing them to reclaim their home. Conversely, the Whitcombs demonstrated such a

condition of defeasance.  At the August 30, 2018 hearing, the Whitcombs testified that when the loan was conceived, they expected to receive the proceeds of pending litigation to repay Paull & Partners.  (August 30, 2018 Hearing at 11:18 a.m.).  Once the debt was paid, they expected that Waterdog would then transfer the home back in their name.  (August 30, 2018 Hearing at 11:18 a.m.).  This fits within the definition of a condition of defeasance unlike the facts in *Berry*.

As a result, despite the factual similarities between the two cases, the Whitcombs' dispute satisfies the requirements of a condition of defeasance  (unlike *Berry).*

### Duty of Inquiry

At the conclusion of the August 30, 2018 hearing, the Court requested additional briefing from the parties regarding whether a duty of inquiry affects a pretended sale or whether Paull & Partners had a duty of inquiry to investigate the homestead status of the property prior to funding the loan to the Whitcombs.  (August 30, 2018 Hearing at 11:25 a.m.).

The Fifth Circuit addressed a similar issue in *In re Rubarts*, 896 F.2d 107, 108–09 (5th Cir. 1990).  The debtor in *Rubarts* conveyed his residence to his business to obtain a loan from a bank.  *Id.* at 108.  The residence served as collateral for the loan; however, after the loan was funded, the debtor re-conveyed the property from his business for tax purposes.  *Id.* at 109.  The debtor defaulted on his loan, filed for bankruptcy, and claimed the home as his exempt homestead under Texas law.  *Id.* at 109.

In an adversary proceeding, the debtor alleged that the bank's lien was an attempt to circumvent homestead protections and thus was void under the Texas Constitution.  *Id.* at 109–10.  The Fifth Circuit examined Texas case law and concluded that "a purchaser's or lender's duty of inquiry must be 'prosecuted as far as a prudent man.'"  *Id.* at 112 (quoting *Eylar v. Eylar*, 60 Tex. 315, 320 (1883)).  Applying this standard, the Fifth Circuit concluded that a party bore

no duty of inquiry when transactions were valid on their face.  *Id.*  However, a prudent person

with knowledge of a "potential sham transaction," which seeks to hinder homestead protections

(such as a pretended sale), imposes a duty of inquiry on the lender or purchaser regarding the

"circumstances under which the purported sale was made."  *Id.* (citing *Fuller v. Preston State

Bank*, 667 S.W.2d 214, 217 (Tex. App.—Dallas 1983)).

   The holding in *Rubarts* was the product of a lender attempting to assert an estoppel claim

against a debtor who claimed a homestead exemption.  *Id.* at 109.  Although the estoppel

argument in *Rubarts* differs from the Whitcombs' dispute with Paull & Partners, the holding

remains applicable to the duty of inquiry in a pretended sale.  The Fifth Circuit held that the

debtor in *Rubarts* secretly intended to reconvey the property from his business prior to repaying

the loan.  *Id.* at 113.  However, sufficient evidence was presented at trial to charge the lender

with constructive notice regarding the debtor's scheme.  *Id.*  Material to this conclusion was the

debtor's continuous and uninterrupted occupation of the home, the absence of a rental agreement

allowing the debtor to use home, an insurance policy in the debtor's name, and a loan

application, filled out with the debtor's information rather than the business's.  *Id.*

   Similar evidence presented at the August 30, 2018 hearing illustrates Paull & Partners'

constructive notice of the Whitcombs' intent and the potential for a sham transaction.  Alan Paull

testified that he funded the loans in question based purely on the value of the Property to secure

the loans.  (August 30, 2018 Hearing at 9:58 a.m.).  However, credible testimony also

demonstrated that Paull & Partners' attorney in the transaction, Todd Taylor, had personal

knowledge that the Whitcombs continued to reside on the Property contradicting the non-

homestead designation affidavit.  (August 30, 2018 Hearing at 9:12, 10:33 a.m.).  Paull also

knew the Property was not for sale based on conversations with other investors, distinguishing

this transaction from the house flipping loan Paull & Partners typically funds.  (August 30, 2018 hearing at 9:54 a.m.).  Further, Paull granted the loan on an "as is" basis without accounting for improvements to the Property, as one would expect in a house flipping scenario.  (August 30, 2018 Hearing at 10:03 a.m.).

This testimony demonstrates that Paull & Partners had constructive knowledge that the Whitcombs obtained these loans to refinance existing debt on their homestead rather than conduct a legitimate business transaction with Waterdog.  Accordingly, Paull & Partners failed to satisfy its duty of inquiry regarding the alleged pretended sale in question, further supporting the categorization of this transaction as a pretended sale.

### Contractual Subrogation

Paull & Partners' summary judgment motion alternatively argues that it retains a valid lien on the Property based on its right to subrogation.  (ECF No. 20 at 13–14).  Paull & Partners points to an express subrogation clause in the deed of trust, which granted Paull & Partners the rights of lienholders whose interests were satisfied from loan proceeds.  (ECF No. 20 at 13). Whitcomb responds that the deed of trust Paull & Partners relies on for its argument is void under the Texas Constitution and that Paull & Partners is not entitled to an equitable remedy based on the doctrine of clean hands.  (ECF No. 22 at 14–16).

Under Texas law, the right of subrogation applies when a subsequent lienholder extinguishes an earlier lienholder and inherits the earlier lienholder's rights.  *Bank of Am. v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011).  Two types of subrogation are recognized: contractual subrogation, which arises through party agreement, and equitable subrogation, which is dictated through the facts and circumstances of a dispute.  *M.D. Fleetwood v. Med Ctr. Bank*, 786 S.W.2d 550, 554 (Tex. App.—Austin 1990).  The doctrine of subrogation

is broadly construed and liberally applied under Texas law.  *See Lyda Swinerton Builders, Inc., v. Cathay Bank*, 409 S.W.3d 221, 242 (Tex. App.—Houston [14th Dist.] 2013).

Although the Whitcombs claim the Property as their homestead, the Texas Constitution contains two carveouts which do not fall within Texas's broad homestead protection—liens arising from purchase money and liens arising from taxes.  Tex. Const. art. XVI, § 50(a)(1), (2). If a lien arises from the satisfaction of debt from either purchase money or taxes, the lender may be subrogated to the rights of the discharged parties.  *Vogel v. Glickman*, 117 F. Supp.2d 572, 578 (W.D. Tex. 2000); *Lyda Swinerton Builders*, 409 S.W.3d at 247 (holding that "tax lien transfer statutes do not abrogate common law subrogation doctrines").  Accordingly, even a claim that property is an exempt homestead cannot overcome a subrogated lien arising from purchase money or tax debt.  *Id.*

The deed of trust signed by Whitcomb in his capacity as "Managing Member" of Waterdog contains an express subrogation clause that states, "If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid."  (ECF No. 20-14 at 4).  Whitcomb himself testified that out of the $875,000.00 Paull & Partners loaned him, $443,729.45 was paid to Cadence Bank to release the purchase money mortgage on the home and an additional $45,406.54 released the tax relief agency's lien on the home.  (August 30, 2018 Hearing at 9:13 a.m.; ECF No. 20-17 at 1).  Both Cadence Bank and the tax relief agency possessed valid liens on the Property, which fall within the purchase money and tax carveouts to homestead protection in the Texas Constitution.  Tex. Const. art. XVI, § 50(a)(1), (2).  As a result, Paull & Partners was contractually subrogated to the rights of the purchase money and tax lien holders after Whitcomb used the loan proceeds to pay

off those debts on the Property.  Further, the Whitcombs' claim that the Property is their exempt homestead cannot defeat Paull & Partners' right to subrogation.

However, the Whitcombs argue that Paull & Partners is not entitled to subrogation because the deed of trust, which contained the subrogation clause, was void as a pretended sale under the Texas Constitution.  (ECF No. 22 at 14).  The Whitcombs' argument fails to acknowledge the presence of a partial invalidity clause within the deed of trust that states: "If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected."  (ECF No. 20-14 at 7).  Conceding that a pretended sale occurred, the partial invalidity clause would not affect the enforcement of the subrogation clause.  *Vogel*, 117 F. Supp.2d at 579–80 (holding "if a debtor executes a partial lien invalidity clause, then that clause will control").

Similarly, the subrogation analysis is not impacted by the fact that the deed of trust and note were executed by Waterdog, rather than Whitcomb individually.  Texas courts examine the privity between the *lender* who pays the debt of the existing lienholder and inherits the rights of the prior lienholder.  *Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 807 (Tex. 1978).  There is no requirement that privity exist between the *borrowers* of debt when determining whether a lender is contractually subrogated.  *Vogel*, 117 F. Supp.2d at 579 (citing *Leonard v. Brazosport Bank of Tex.*, 628 S.W.2d 216, 219 (Tex. App.— Houston [14th Dist] 1982)).  Despite Whitcomb's contentions, when the proceeds from Paull & Partners' loan paid off both Cadence Bank's purchase money mortgage and the tax relief agency's liens, Paull & Partners became contractually subrogated to the rights of the lien holders.

## Equitable Subrogation

Because we find that Paull & Partners is entitled to contractually subrogation, we need not address whether they are also equitably subrogated.

## Personal Liability

Paull & Partners further argues that even if the Court voids the conveyance of the Property to Waterdog as a pretended sale, that remedy does not forfeit the principal and interest due under Paull & Partners' loans.  (ECF No. 20 at 14).

Texas courts have held that § 50(a)(1) of the Texas Constitution provides a homeowner with protection from foreclosure rather than a remedy of forfeited principal and interest. *Garofolo v. Ocwen Loan Serv., LLC*, 497 S.W.3d 474, 478–79 (Tex. 2016).  Although provisions within the Texas Constitution allow for the forfeiture of principal and interest, the parties have not raised their application within this dispute.   *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x). Accordingly, even if a pretended sale exists, the Whitcombs remain liable for the principal and interest due on the Property under the Note.

The Whitcombs appear to concede this issue, arguing instead that any liability incurred by Mr. Whitcomb is not attributable to Mrs. Whitcomb.  (ECF No. 22 at 16).  The personal guarantee names Mr. Whitcomb as the guarantor of Waterdog's debt.  (ECF No. 20-13 at 1).  At no point does the personal guarantee name or refer to Mrs. Whitcomb or indicate that Mrs. Whitcomb is responsible for any liability.  Thus, Mr. Whitcomb is the only party personally liable for the debt executed in Paull & Partners' loan.  However, this Memorandum Opinion does not address the effect a chapter 7 discharge may have on the remedies available to Paull & Partners.

<u>Temporary Injunction</u>

Paull & Partners also advocates for dissolving the temporary injunction issued by the state court which has prevented their foreclosure on the Property.  (ECF No. 20 at 16).  The Whitcombs claim that because Paull & Partners does not hold a valid lien over the Property, the injunction should remain in place.  (ECF No. 22 at 16).

Courts have authority to dissolve injunctions when the need for an injunction is rendered moot.  *See Burlington N. & Santa Fe Ry. Co. v. Bhd. of Locomotive Eng'r*, 367 F.3d 675, 677–78 (7th Cir. 2004).  In this case, several considerations favor dissolving the state court's temporary injunction.

The injunction was imposed to prevent a potential wrongful foreclosure on the Property due to the potential for a pretended sale with a condition of defeasance.  However, as described earlier, Paull & Partners is subrogated to the rights of both purchase money and tax lien holders. These two liens are specifically identified as exceptions to homestead foreclosure enumerated in § 50(a)(1) and (2) of the Texas Constitution.  Paull & Partners has a valid right to contractually subrogated liens on the property and there is no longer a risk of wrongful foreclosure.

Additionally, in Mr. Whitcomb's bankruptcy case, Paull & Partners filed a motion for relief from the automatic stay, which Mr. Whitcomb consented to through an agreed order.  (*See* Case No. 17-31692; ECF No. 166).  The Chapter 7 Trustee has also retained a broker to sell the Property with the Whitcombs' consent.  (*See* Case No. 17-31692; ECF No. 172).  Without a risk of wrongful foreclosure and with the Whitcombs' consenting to the sale of the property, the temporary injunction issued by the state court is moot, justifying its dissolution.  Although the state court injunction is lifted, the automatic stay remains in place, and given the initial steps taken by the Trustee's towards selling the Property, Paull & Partners may not foreclose on the

Property.  The Trustee's objection to Mr. Whitcomb's claimed homestead exemption remains unripe in light of the pending sale of the Property.  (Case No. 17-31692; ECF No. 159).

### Remaining Requested Relief

The Whitcombs' complaint also asserts various other causes of action against Paull & Partners, such as violations of the Texas Debt Collection and Deceptive Trade Practices Acts, intentional infliction of emotional distress, unjust enrichment, and breach of duty of good faith and fair dealing.  (ECF No. 20 at 15).  Each of these claims is predicated on the notion that Paull & Partners has no lien on the Property.  (ECF No. 22 at 16).  Yet, as presented earlier, Paull & Partners has a valid lien on the Property based on its contractual subrogation to the rights of the purchase money and tax lien holders.  Accordingly, the remaining causes of action against Paull & Partners are dismissed.

### <u>Further Hearing</u>

The Court will conduct an evidentiary hearing on the remaining factual issues on April 25, 2019 at 9:00 a.m.

SIGNED **<u>March 20, 2019.</u>**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE